# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JAMES SCOTT SPARKMAN,<br><br>　　　　　Defendant. | Case No. 5:21-cv-00788-JWH-SHK<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF Nos. 16 & 17]** |

Before the Court are the cross-motions of Plaintiff United States of America and Defendant James Scott Sparkman for summary judgment.[1] The Court finds those matters appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[2] the Court orders that the Government Motion is **GRANTED** and that the Sparkman Motion is **DENIED**, for the reasons set forth herein.

## I. BACKGROUND

The Government filed its complaint commencing this action in May 2021. The parties filed the instant cross-motions in November 2021, and they are fully briefed.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). The substantive law determines the facts that are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing

---

[1] Pl.'s Mot. for Summ. J. (the "Government Motion") [ECF No. 16]; Def.'s Mot. for Summ. J. (the "Sparkman Motion") [ECF No. 17].

[2] The Court considered the following papers: (1) the Government Motion (including its attachments); (2) the Sparkman Motion (including its attachments); (3) Pl.'s Opp'n to the Sparkman Motion (including its attachments) [ECF No. 18]; (4) Def.'s Opp'n to the Government Motion ("Sparkman's Opposition") (including its attachments) [ECF No. 19]; (5) Pl.'s Reply in Supp. of Government Motion (the "Government's Reply") [ECF No. 21]; and (6) Def.'s Reply in Supp. of the Sparkman Motion [ECF No. 22].

law will properly preclude the entry of summary judgment." *Id.* Factual disputes that are "irrelevant or unnecessary" are not counted. *Id.* A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under that standard, the moving party has the initial burden of informing the court of the basis for its motion and of identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *See id.* at 325. Instead, the moving party need only prove that there is an absence of evidence to support the nonmoving party's case. *See id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *See Celotex*, 477 U.S. at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252). The non-moving party must make this showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

Furthermore, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The burden is on the proponent to show

that the material is admissible as presented or to explain the admissible form that is anticipated." Advisory Committee Notes, 2010 Amendment, to Fed. R. Civ. P. 56. Reports and declarations in support of an opposition to summary judgment may be considered only if they comply with Rule 56(c) of the Federal Rules of Civil Procedure, which requires that they "be made on personal knowledge, set forth facts that would be admissible evidence, and show affirmatively that the declarant is competent to testify to the matters stated therein." *Nadler v. Nature's Way Prod., LLC*, 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015); *see also Loomis v. Cornish*, 836 F.3d 991, 996–97 (9th Cir. 2016) (noting that hearsay statements do not enter into the analysis on summary judgment).

### III.  FACTS

For the tax years 1996 through 2000, Sparkman underreported his income tax liabilities to the Internal Revenue Service.[3] The IRS issued a statutory notice of deficiency to Sparkman.[4] Sparkman subsequently challenged that notice of deficiency in the Tax Court.[5] In June 2005, the Tax Court issued a Memorandum of Findings of Fact and Opinion.[6] Six months later, the Tax Court issued a Decision establishing the amount of Sparkman's deficiencies for the tax years 1996 through 2000.[7]

After the Tax Court issued its Decision, the IRS assessed Sparkman's tax liabilities and issued a notice and demand for payment.[8] The following is a summary—by tax year—of the date that the tax liability was assessed against

---

[3] Def.'s Statement of Genuine Disputes of Material Fact [ECF No. 19-1] ¶ 1.
[4] *Id.* at ¶ 2.
[5] *Id.*
[6] *Id.* at ¶ 3.
[7] *Id.* at ¶ 4.
[8] *Id.* at ¶ 5.

Sparkman, the date that the notice and demand was issued, and the balance that the IRS alleges was due as of March 24, 2021:[9]

| Tax Year | Assessment | Notice and Demand | Balance Allegedly Due as of March 24, 2021 |
|---|---|---|---|
| 1996 | 5/1/2006 | 8/12/2006 | $116,209.23 |
| 1997 | 5/1/2006 | 8/12/2006 | $92,897.45 |
| 1998 | 5/1/2006 | 8/12/2006 | $66,416.22 |
| 1999 | 5/1/2006 | 8/12/2006 | $245,735.93 |
| 2000 | 7/3/2006 | 9/27/2006 | $82,615.71 |
|  |  | Total: | $603,874.54 |

Sparkman appealed the Tax Court's decision to the Ninth Circuit.[10] The Ninth Circuit affirmed the Tax Court's decision.[11] In August 2006, the IRS issued to Sparkman a Notice of Intent to Levy and Your Rights to a Collection Due Process Hearing for the tax years 1996, 1997, 1998, and 1999.[12] The next month, Sparkman timely requested a Collection Due Process Hearing (a "CDP Hearing").[13] In March 2008, the IRS issued a Notice of Determination to Sparkman sustaining the proposed levy action.[14]

In October 2006, the IRS issued a Notice of Lien Filing and Your Right to a Collection Due Process Hearing.[15] The Notice of Lien Filing included income tax liabilities for the tax years 1996 through 2000.[16] Later that month, Sparkman

---

[9]  *Id.* at ¶ 6.
[10] *Id.* at ¶ 7.
[11] *Id.*
[12] *Id.* at ¶ 8.
[13] *Id.* at ¶ 9.
[14] *Id.* at ¶ 10.
[15] *Id.* at ¶ 11.
[16] *Id.* at ¶ 12.

timely requested a CDP Hearing regarding the filing of a notice of federal tax lien.[17] In March 2008, the IRS issued a Notice of Determination sustaining the filing of a notice of federal tax lien.[18]

The next month, Sparkman filed timely petitions in the Tax Court challenging the proposed levy action—Docket No 9278-08L[19]—and challenging the notice of federal tax lien—Docket No. 9279-08L.[20] The Tax Court consolidated those two cases[21] and, in December 2009, issued an opinion sustaining the IRS determinations.[22] One week later, the Tax Court issued a Decision for both cases.[23]

In January 2012, Sparkman sent a letter requesting that the IRS allow him to pay $2,000 per month on his outstanding tax liabilities.[24] The IRS responded by analyzing Sparkman's ability to pay; specifically, by subtracting Sparkman's allowable expenses from his gross income.[25] The IRS rejected Sparkman's request.[26] The IRS based that decision chiefly on its determination that Sparkman's mortgage payments exceeded the allowed housing expense for Honolulu, Hawaii, which is where Sparkman lived at the time.[27] Accordingly, the IRS determined that it should advise Sparkman to liquidate his properties

---

[17] *Id.* at ¶ 13.
[18] *Id.* at ¶ 14.
[19] *Id.* at ¶ 15.
[20] *Id.* at ¶ 16.
[21] *Id.* at ¶ 17.
[22] *Id.* at ¶ 18.
[23] *Id.* at ¶ 19.
[24] *Id.* at ¶ 20.
[25] *Id.* at ¶ 22.
[26] *Id.* at ¶ 23.
[27] *Id.*

and resolve his tax liabilities.[28] That determination was memorialized on the IRS's Integrated Collection System (the "ICS").[29]

In addition to his residence in Honolulu, Sparkman also owned real property in Sylmar, California.[30] In February 2012, the IRS advised Sparkman's representative[31] that Sparkman should sell that property because Sparkman was using his income to pay the mortgage on the Sylmar property, even though it was neither his residence nor a rental property.[32]

Two months later, the IRS sent Sparkman a letter detailing various issues that it had with his payment request.[33] The IRS told Sparkman, for example, that Sparkman needed to reduce his housing expenses to be consistent with the allowable standard for Honolulu.[34] The ICS history from that time states that Sparkman's minimum allowable monthly payment was $5,839.00 and that his mortgages on several properties prevented him from making that payment.[35]

The next month, the IRS spoke with Sparkman's representative regarding Sparkman's sale of his real property.[36] Sparkman's representative indicated that Sparkman would make a payment the following week.[37] Approximately four weeks later, Sparkman's representative asked for additional time so that Sparkman could resolve the issue with the Sylmar property by renting it, renegotiating the loan, or selling it.[38]

---

[28] *Id.* at ¶ 25.
[29] *Id.*
[30] *Id.* at ¶ 26 & 27.
[31] The parties do not reveal who served as Sparkman's representative.
[32] *Id.*
[33] *Id.* at ¶ 28.
[34] *Id.*
[35] *Id.* at ¶ 29.
[36] *Id.* at ¶ 31.
[37] *Id.*
[38] *Id.* at ¶ 33.

In September 2012, Sparkman's representative informed the IRS that the representative had advised Sparkman to sell Sparkman's unoccupied property in Southern California.[39]  In October, Sparkman's representative told the IRS that Sparkman was still trying to resolve the issue with that property.[40]  The parties communicated again in February 2013, and Sparkman's representative requested a few more days to deal with Sparkman.[41]  Nine weeks later, Sparkman's counsel requested an installment agreement of $1,400 per month.[42]  In June 2013, the IRS accepted Sparkman's offer and granted an installment agreement of $1,367 per month.[43]  That agreement included the income tax liabilities for the tax years 1996 through 2000 and employment taxes for the periods ending September 30, 2004, and March 31, 2005, through September 30, 2006.[44]  Unrelated to that agreement, in 2013 the IRS audited Sparkman's tax return for the tax year 2007 and assessed a deficiency of $16,057.[45]

In January 2014, Sparkman began to make electronic payments to the IRS.[46]  The next month, however, Sparkman began designating his payments to be applied to tax liabilities not covered by the installment agreement, including the tax year 2007.[47]  The following is a summary by date of electronic payments

---

[39] *Id.* at ¶¶ 35 & 36.  The Government alleges that the conversation concerned the Sylmar property.  Sparkman avers that the evidence indicates only that the conversation was about a Sparkman-owned property in Southern California.  *Id.*
[40] *Id.* at ¶¶ 37 & 38.
[41] *Id.* at ¶¶ 39 & 40.
[42] *Id.* at ¶ 42.
[43] *Id.* at ¶¶ 43-49.
[44] *Id.* at ¶¶ 49 & 50.
[45] *Id.* at ¶ 53.
[46] *Id.* at ¶ 54.
[47] *Id.* at ¶¶ 55 & 56.

that Sparkman applied to the tax year 2007 from the date that the installment agreement was approved until the date that it was terminated:[48]

| Date | Amount | Tax Year | Tax Type |
|---|---|---|---|
| 2/24/2014 | $1,367.50 | 2007 | Income |
| 6/20/2014 | $1,368.00 | 2007 | Income |
| 11/23/2015 | $1,393.00 | 2007 | Income |
| 12/22/2015 | $1,380.00 | 2007 | Income |
| 1/22/2016 | $1,381.00 | 2007 | Income |
| 2/23/2016 | $1,390.00 | 2007 | Income |

Sparkman failed to comply with the installment agreement's terms.[49] Accordingly, in March 2016, the IRS terminated that agreement.[50] The IRS filed its Complaint commencing this action in May 2021.[51]

## IV.  DISCUSSION

As a threshold matter, the parties and the Court agree that summary judgment is appropriate—for one side or the other—because there are no genuine disputes of material fact.[52] The parties and the Court also agree that the key legal issue is whether the Government timely filed its complaint before the statute of limitations on collection expired for the tax years 1996 through 2000.[53] To answer that question, the Government helpfully frames the dispositive issues as follows:

---

[48]  *Id.* at ¶ 57.
[49]  *Id.* at ¶ 58.
[50]  *Id.* at ¶ 59.
[51]  *Id.* at ¶ 60.
[52]  *See* Sparkman Motion 16:11-14; Government Motion 2:3-4.
[53]  *See* Sparkman Motion 16:7-9; Government Motion 6:12-13.

  (1) Whether the statute of limitations on collection for tax years 1996 through 1999 was suspended for 1,304 days between Sparkman's request for a CDP Hearing and the time the Tax Court's Decision became final;

  (2) Whether the statute of limitations on collection for tax year 2000 was suspended for 1,265 days between Sparkman's request for a CDP Hearing and the time the Tax Court's Decision became final; and

  (3) Whether the statute of limitations on collection for tax years 1996 through 2000 was suspended for 546 days between the time [Sparkman's] installment agreement was accepted for processing, accepted, and later terminated.[54]

### A. Collection Due Process

The IRS must provide taxpayers with notice and the opportunity to request a CDP Hearing when the IRS intends to use a levy to collect unpaid tax liabilities or when the IRS files a notice of federal tax lien. *See, e.g.*, 26 U.S.C. § 6330(a); 26 C.F.R. § 301.6330-1; 26 U.S.C. § 6320(a); 26 U.S.C. § 6320(a); 26 C.F.R. § 301.6320-1. A taxpayer has the right to request a CDP Hearing within 30 days of receiving such a notice. *See* 26 U.S.C. §§ 6320(a)(3)(B) and (b); 26 U.S.C. §§ 6330(a)(3)(B) and (b).

A taxpayer's timely request for a CDP Hearing suspends certain collection actions and pauses the statute of limitations for collection. *See, e.g.*, 26 U.S.C. § 6330(e)(1); 26 C.F.R. 301.6330-1(g)(2) A-G1; 26 U.S.C. § 6320(c); 26 C.F.R. § 301.6320-1(g)(1). The statute of limitations on collection was tolled from the date that Sparkman filed his request for a CDP hearing with the IRS

---

[54] Government Motion 6:2-11.

-10-

until 90 days after the Tax Court entered a decision. *See id.*; *see also United States v. Kollman*, 774 F.3d 592, 597 (9th Cir. 2014).

Here, Sparkman requested a CDP Hearing in response to the Notice of Intent to Levy on September 11, 2006. The IRS issued Notice of Determination, which Sparkman appealed to the Tax Court. The Tax Court issued its Decision on January 6, 2010. The Decision became final 90 days later—on April 6, 2010. Thus, in total, the statute of limitations on collection for the tax years 1996 through 1999 was suspended by the CDP process for a total of 1,304 days—from September 11, 2006, through and including April 6, 2010.

Sparkman avers that the IRS failed to honor the timeliness of Sparkman's CDP Hearing request and then engaged in illegal collection activity.[55] Whether the IRS engaged in illegal collection activity is irrelevant. Sparkman cites no authority holding that the statute of limitations is not paused if the IRS prematurely takes action to collect.

For the tax year 2000, Sparkman filed a Notice of Federal Tax Lien Filing on October 20, 2006. The IRS issued Notice of Determination, which Defendant appealed to the Tax Court. The Tax Court issued its Decision on January 6, 2010, which, again, became final 90 days later on April 6, 2010. Thus, in total, the statute of limitations on collection for the tax year 2000 was suspended by the CDP process for 1,265 days—from October 20, 2006, through and including April 6, 2010.

**B. Installment Agreement**

The statute of limitations under 26 U.S.C. § 6502 for collection of any liability is suspended during (1) the period that a proposed installment agreement relating to that liability is pending with the IRS; and (2) for 30 days

---

[55] Sparkman Motion 18:19-25.

immediately following the termination of an installment agreement. *See* 26 C.F.R. § 301.6331-4(c)(1). A proposed installment agreement becomes pending when it is accepted for processing. *See* 26 C.F.R. § 301.6331-4(a)(2). "The date that a proposed installment agreement is accepted for processing—and therefore is pending, thereby suspending the statute of limitations on collection—is not directly defined by the statute." *United States v. Cabansag*, 2010 WL 11597285, at *4 (C.D. Cal. Apr. 2, 2010). Scholars have suggested, and Courts have held, however, that a proposed installment agreement is accepted for processing when (1) it is "received before a Tax Division referral"; (2) it "contains sufficient information to permit the IRS to decide whether the proposal is acceptable"; and (3) "the IRS has not returned the offer." *Id.* (citing *Gessert v. United States*, 627 F. Supp. 2d 942 (E.D. Wis. 2009); Michael I. Saltzman, IRS Practice and Procedure ¶ 15.06[1] (Rev. 2d Ed. 2005)).

      Citing no authority, Sparkman avers that the term "accepted . . . signifies that the IRS through its employee has taken an affirmative step to process the proposed" installment agreement.[56] Sparkman argues that his interpretation is "consistent" with the holdings in *Gessert* and *Cabansag*.[57] The Court is not convinced. If the court in *Cabansag* held that "accepted" meant taking an "affirmative step to process the installment agreement," then it would have so stated. Instead, the *Cabansag* court said that an installment agreement is accepted for processing when it is "***received*** before a Tax Division referral." *Cabansag*, 2010 WL 11597285, at *4 (emphasis added).

      Here, Sparkman filed a proposed installment agreement that was accepted for processing on January 27, 2012. After some changes, the IRS formally accepted the installment agreement on June 25, 2013, suspending the statute of

---

[56]    Sparkman's Opposition 6:16-20.
[57]    *Id.* at 6:16.

-12-

limitations on collections for 516 days. The IRS terminated the installment agreement on March 7, 2016, which suspended the statute of limitations for an additional 30 days. Thus, the installment agreement suspended the statute of limitations for 546 days.

Sparkman argues that the proposed installment agreement could not have been accepted for processing because on May 1, 2012, a Revenue Officer noted that if Sparkman "does not comply [with selling the properties] we will go after the sources of income."[58] But the IRS official made that statement with respect to Sparkman's continued ownership of non-residential properties that were not generating net income. As the Government notes in its reply, "[k]eeping the properties would have required [Sparkman] to pay mortgages and property taxes, instead of paying his federal income tax liabilities. This is generally not allowed and would have resulted in a rejection of the proposed installment agreement."[59] Thus, the ICS history shows that the installment agreement was pending because the officer was trying to negotiate a resolution to allow the agreement to proceed. Sparkman's argument fails. As discussed above, the installment agreement suspended the statute of limitations for 546 days.

## C.    Net Suspension of the Statute of Limitations on Collection

The IRS assessed Sparkman's tax liabilities for the tax years 1996 through 1999 on May 1, 2006. The general 10-year statute of limitations, therefore, would have expired on May 1, 2016. That statute of limitations, however, was suspended for 1,304 days between Sparkman's request for a CDP Hearing (September 11, 2006) and the time that the Tax Court's decision became final (April 6, 2010). The statute of limitations was suspended for an additional 546 days between the time that Sparkman's installment agreement was received

---

[58]    *Id.* at 12:20-13:8.

[59]    Government's Reply 4:2-5.

for processing and was accepted, and, later, was terminated. Thus, in total, the statute of limitations on collection for the tax years 1996 through 1999 was suspended for 1,850 days—*i.e.*, 1304 days + 546 days—which extended the limitations period from May 1, 2016, to May 25, 2021.

The IRS assessed Sparkman's tax liability for the tax year 2000 on July 3, 2006. The general 10-year statute of limitations, therefore, would have expired on July 3, 2016. That statute of limitations, however, was suspended for 1,265 days between Sparkman's request for a CDP Hearing and the time the Tax Court's decision became final. The statute of limitations was suspended for an additional 546 days for the installment agreement. Thus, in total, the statute of limitations for the tax year 2000 was suspended by 1,801 days—*i.e.*, 1265 days + 546 days—which extended the limitations period from July 3, 2016, to June 8, 2021.

Because the Government filed its Complaint on May 4, 2021—*i.e.*, before the June 8, 2021, deadline—the statute of limitations on collections had not expired.

## V.  CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. The Government Motion is **GRANTED**.
2. The Sparkman Motion is **DENIED**.
3. Judgment will issue accordingly.

**IT IS SO ORDERED.**

Dated: December 19, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE